## Sullivan *v.* Straus, Appellant.

[Marked to be reported.]

*Will—Disinheritance of son—Residuary clause.*

Testator, after various devises and bequests to his children, directed as follows : " I now come to the most unpleasant part of my work, that· is the disinheriting of my youngest son John Russell Sullivan in consequence of his disobeying my wishes I wish him to have no interest in profit or principal of any part of my estate whatever if he should be employed by my sons my son James who has charge of all my estate will do right by him, he shall have no claim whatever on any thing which I leave." He then continued : " It must be perfectly understood that all of my estate belongs to my children and grandchildren." *Held* that John was not included in the class designated in the residuary clause, and had no interest in the estate.

Argued March 23, 1894.    Appeal, No. 251, Jan. T., 1894, by defendant, Joseph E. Straus, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1893, No. 902, in favor of plaintiff, James J. Sullivan, on case stated.    Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Case stated to determine title to real estate.

From the case stated it appeared that plaintiff had agreed to sell to defendant the house 1527 North Broad street in the city of Philadelphia, and had tendered to him a deed executed by Mary E. McMichael, Henry S. Sullivan, Sallie S. Hess, and himself, being children of John Sullivan, deceased, under whose will the grantors claimed title.    It appeared that John Sullivan had also another son John Russell Sullivan, and seven minor grandchildren who were children of three of the grantors in the deed.    Defendant claimed that the deed was insufficient, as title remained in John Russell Sullivan and the grandchildren.

The will of John Sullivan was as follows, the portions in brackets being the printed form used by testator :

" [Be it remembered, that I, John Sullivan, being of sound and disposing mind, memory and understanding, and considering the uncertainty of life, do therefore make, publish and declare this to be my last Will and Testament, in manner and form following, that is to say :]

VOL. CLXI—10

" [Item :] When it is the Almighties will to take me to himself I wish my estate to be divided amongst my children as follows, my daughter Mary to have the house 33 East 65th street New York if herself and family wish to come and live in this City then the house in New York is to be sold and the twenty thousand Dollars advanced by me is to be put in a house here for her in addition to above she is to receive five thousand dollars per year from first Mortgage R. R. bond which are laid away for that purpose

" My daughter Sallie is to have the house 1611 Walnut St. with the exception of the two rooms now occupied by me namely the bed and sitting room, knowing James love for Sallies children I wish him to be with them and have the rooms she is also to receive $5,000 per year in addition to the above out of the bonds laid away for that purpose, to prevent my daughters and their families to have any interference with my sons Estate I wish those bonds put back which were sold to build the factory 2224 North 9th St. and until they are put back my sons will have to pay my daughter the income I promised to them namely $5,000 per year to each

" There is one thing I would wish to accomplish whilst here that is to invest—$20,000—for my daughters children the interest of which I would draw whilst I lived, at my decease the interest to cease being drawn, but to accumulate with the principal so that when my grandsons William J. and Henry Morton McMichael were 21 years of age they would each get their equal share with accrued interest to give them a start in life, so also my granddaughters Marguerite and Annie Hess when they are 18 years they are to get their equal share with accrued interest as a marriage portion for each, if the above is not invested by me it is not obligatory on my son James to meddle with it.

" My two sons James J. and Henry J. Sullivan are to have the business now under the name of John Sullivan & Sons all the real estate buildings machinery and stock in 902 Montgomery Avenue also in 224 North 9th St. Philadelphia I wish my grandson William J Sullivan (being called after my deceased son) to have the house 1617 North Broad St, it must be understood that his father is to occupy the house as long as he wishes I merely wish my grandson to have the house ultimately, my

granddaughters Susan and Eveline. Susan being named after her grandmother who is very rich she will be taken care of, also little Eveline who is named after her own mother who is also rich she will be taken care of

" I now come to the most unpleasant part of my work, that is the disinheriting of my youngest son John Russell Sullivan in consequence of his disobeying my wishes I wish him to have no interest in profit or principal of any part of my estate whatever if he should be employed by my sons my son James who has charge of all my estate will do right by him, he shall have no claim whatever on any thing which I leave,

" [And as to all the rest, residue and remainder of my estate, real, personal or mixed, of whatever nature or kind, or wheresoever situate at the time of my decease, I do hereby give, devise and bequeath]

" It must be perfectly understood that all of my estate belongs to my children and grandchildren, should any of my children die without issue then their share goes back to my children and their children that are living.

" [And lastly, I do make, constitute and appoint] my son James J. Sullivan my executor for all of my estate         [to be the Execut         of this my last Will and Testament, hereby revoking all former Wills and Testaments by me at any time heretofore made, and declaring this to be my last Will and Testament.] "

The will was signed and dated, with an unexecuted clause for witnesses.

Judgment for plaintiff. Defendant appealed.

*Error assigned* was above order.

*Mayer Sulzberger, A. S. Arnold* with him, for appellant.— The deed tendered does not convey a good and marketable title. The premises described form part of the residuary estate devised to testator's children, whereas John Russell Sullivan and children do not join in the deed.

Where the language of a will is plain and unambiguous there is no room for construction : Geisinger's Ap., 1 Mona. 600 ; Still v. Spear, 45 Pa. 168. Words can never be supplied to create an intent : 1 Jarman on Wills, p. 486 ; Varner's Ap., 87 Pa. 422.

A testamentary clause disposing of " all the rest, residue, and remainder of my estate " will, in the absence of an apparent contrary intent, pass residuary realty as well as personalty: Hackett v. Com., 102 Pa. 505.

The fact that testator has, prior to the residuary clause, assigned John's disobedience to his wishes as a reason for depriving him of an interest in the profit or principal of his estate, does not control an interpretation of the residuary clause, the last declaration of his wishes: 1 Jarman on Wills, p. 484; Cole v. Wade, 16 Ves. 27; Sheetz's Ap., 82 Pa. 213.

The subject-matter of the disinheriting clause cannot be the residuary estate : (1) Because it is the last disposition contained in a series of legacies, and (2) because a proper residuary clause immediately follows.

It is against the inclination of the courts to reject any part of a will as repugnant, if any fair and reasonable construction can be given to the whole will which will render every part effective : Finney's Ap., 113 Pa. 11; McDevitt's Ap., 113 Pa. 103.

The rule in Pennsylvania is that a devise to a man and his children without any additional words must be regarded in the same manner as though made to any other class or number of persons ; the devisees are tenants in common : Mitchell v. Mc-Conahey, 34 Leg. Int. 48; Oates & Hatterley v. Jackson, 2 Str. 1172; Newill v. Newill, L. R. 7 Ch. Ap. 253; Utz' Est., 29 Cal. 200; Freeman on Cotenancy, § 26; McKee's Ap., 104 Pa. 571.

The whole estate is given to the children and grandchildren as one class, and though there are no words creating a fee simple, nor is the word " fee simple " used, yet the rule is that in such cases an estate in fee passes : Act of April 8, 1833, P. L. 249.

The provision that in the event of the death of any of his children without issue the deceased child's share of his estate should go back to the testator's children and their children " that are living," must be interpreted to mean the testator's children and grandchildren living at the time of the death, under the rule laid down in Eichelberger v. Barnitz, 9 Watts, 447; Ray v. Alexander, 146 Pa. 242; Hoff's Est., 147 Pa. 636.

Negative words have no testamentary virtue, and they are not sufficient to exclude the title of an heir unless there be an

actual gift to some other definite object: Bender v. Dietrick, 7 W. & S. 287 ; Hancock's Ap., 112 Pa. 532 ; Faulstich's Est., 154 Pa. 188.

*J. B. Townsend*, for appellee.—The only thing on the face of the will which, on the first reading, militates against the exclusion of John from participating in any property that he might leave, are the words which follow immediately thereafter in the residuary clause, where he says that it is to be understood " that all my estate belongs to my children and grandchildren." We assume here that the word " other " ought to be introduced before the word " children." If the testator intended to alter, revoke, or modify the exclusion of John, which he had accomplished by the words immediately preceding this residuary clause, he surely would have introduced something to manifest an intention to change the emphatic exclusion he had just accomplished. It is quite within the power of the court to supply a word where it is necessary to carry out a defective expressed intent: McKeehan v. Wilson, 53 Pa. 74 ; Graham v. Graham, 3 Clark, 212. No violence would be caused, but simply elucidation, by the introduction of the word " other " before children.

In Pennsylvania the adherence to the rule about carrying out the manifest intention of the testator, notwithstanding some apparent repugnance or contradiction, has gone very far : Ferry's Ap., 102 Pa. 207 ; Finney's Ap., 113 Pa. 11 ; Fahrney v. Holsinger, 65 Pa. 388 ; Newbold v. Boone, 52 Pa. 167 ; Sheetz's Ap., 82 Pa. 213 ; Jones v. Strong, 142 Pa. 498 ; Miller's Est., 38 Pa. 314.

The rule which sacrifices the former of several contradictory clauses is never applied but on the failure of every attempt to give the whole will such a construction as renders every part effective : 1 Jarman on Wills, 439 ; Redfield on Wills, 451 ; Jenks v. Jackson, 127 Ill. 341.

It is a well settled rule that where there is any obscurity or difficulty in determining the parties who take under a will, and the gift is susceptible of two meanings, the court requires the adoption of that one which conforms most closely to the ordinary and usual rule of inheritance : Minter's Ap., 40 Pa. 111 ; Horwitz v. Norris, 60 Pa. 261 ; Stehman's Ap., 45 Pa. 398 ;

France's Est., 75 Pa. 220 ; McKee's Ap., 104 Pa. 571 ; Herr's Est., 28 Pa. 467.

OPINION BY MR. JUSTICE GREEN, April 16, 1894 :

The testator did not content himself with a mere omission of his son John as a legatee under his will, but he particularly and especially excluded him, by express words, from any participation in his estate. His words are, " I now come to the most unpleasant part of my work, that is the disinheriting of my youngest son John Russell Sullivan in consequence of his disobeying my wishes. I wish him to have no interest in profit or principal of any part of my estate whatever if he should be employed by my sons my son James who has charge of all my estate will do right by him, he shall have no claim whatever on anything which I leave." Of course if this clause of the will had followed the residuary clause there would not have been the slightest question that John would have taken nothing under the will. It is only because the residuary clause follows the clause of disinheritance that there is any occasion for any question as to the intent of the testator. But it is the intent of the testator which must prevail, and if that be clearly apparent, the order of the testamentary clauses is of little moment. What then was the testator's intent as to his son John ? The language of the will above quoted excludes John from any, even the slightest, participation in the testator's estate. It was so intended ; the testator says it was so intended. He calls it " the most unpleasant part of my work." What was it that was so very unpleasant? He explains it himself in immediate sequence, thus, " that is, the disinheriting of my youngest son John Russell Sullivan in consequence of his disobeying my wishes. . . . he shall have no claim whatever on anything which I leave."

After this language it is altogether impossible to hold that the testator intended, or was even willing, that John should take any part of his estate. Of course if after that, he had expressly given a legacy to this son by name, he would take the gift because it was expressed subsequent to the exclusion. But it cannot be done by a mere implication even when the subsequent gift is to a class which would include John. We therefore hold that when the testator said in the very next sentence of the will, " It must be perfectly well understood that

all of my estate belongs to my children and grandchildren " he did not mean to include John or his children within the designated class. · Any other construction of this residuary clause would simply nullify the immediately preceding clause of the will which expressly excluded him. We do not see any occasion for any refinement of reasoning upon the subject. The testator has said in unmistakable language that John is to have no part of his estate, and these words can only be enforced by holding that in the succeeding clause he meant his children other than John.

Judgment affirmed.